Gandy v. The State.

---

JAMES L. GANDY, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

| 10 | 243 |
| 46 | 88 |
| 10 | 243 |
| 48 | 757 |
| 10 | 243 |
| 51 | 667 |

1. **Conviction of Felony:** ITS EFFECT UPON THE RIGHT TO VOTE AND HOLD OFFICE. A person convicted of a felony under a law of this state, or of the United States, is not qualified to vote or hold office under the laws of this state, unless restored to civil rights.

2. ———: CONSPIRACY TO VIOLATE A LAW OF THE UNITED STATES NOT A FELONY. A conviction for a conspiracy to violate a law of the United States, under sec. 5440 of the Rev. Statutes of the United States, is not a conviction of a felony, but of a misdemeanor merely.

3. ———: WHEN PUNISHMENT TO DETERMINE GRADE OF OFFENSE. When the court, in affixing the punishment for a given offense, is authorized in its discretion to consider it either as a felony or as a mere misdemeanor, and treat it accordingly, the punishment which the court actually inflicts must determine the grade of that offense, especially when in consequence of such offense it is sought to deprive the offender of civil rights.

4. **Practice**: QUO WARRANTO: SUPERSEDEAS. Although there is no statute entitling a party to a supersedeas, or stay of proceedings on a judgment of *ouster* from office, yet it is within the province of the trial court, in its discretion, to grant it. But the refusal of that court to do so cannot be reviewed by proceedings in error.

ERROR to the district court of Richardson county. It was an information in the nature of *quo warranto*, on the relation of the district attorney, alleging, in substance, that in April, 1879, Gandy was duly elected mayor of the city of Humboldt, in said county, and is still acting as such mayor; that at the time of such election " he was not an elector of the state of Nebraska, and not being such, was ineligible to be elected to the said office of mayor of said city of Humboldt, or to any other office of honor or trust in said state," for the reason, as it is charged, that in June, 1872, he was convicted in the United States district court for the district of Nebraska of a felony or infamous crime. The prayer of the information is that the defendant be required to answer by what warrant or authority he claims to hold the said office. · To this information Gandy demurred generally, and the demurrer having been overruled, he answered, admitting that he had been elected to and was then holding the said office, setting up specifically his right to hold the same, and denying the allegation of the petition in reference to the conviction of a felony or other infamous crime. On the trial of the case before Weaver, J., a jury having been waived by the parties, the state offered in evidence a transcript of the record of the United States district court, which transcript is referred to in the opinion. The defendant offered no evidence, but it was expressly admitted by the parties that Gandy was duly elected to and was holding the said office, and that he had a right to hold the same, unless the

transcript showed the conviction of such an offense as
would disqualify him therefrom.   Judgment of *ouster*
was rendered, and he brought the cause up by petition
in error.

*Schoenheit & Thomas*, for plaintiff in error.

*Isham Reavis*, for defendant in error.

LAKE, J.

Counsel for the state are manifestly mistaken in
supposing that Gandy, the plaintiff in error, was con-
victed of two distinct offenses.   The indictment on
which he was tried, it is true, contained two counts,
but both of them were framed under sec. 5440 of the
Revised Statutes of the United States.   Neither count
purports to charge a violation of section 5448, but the
gravamen of each is an alleged conspiracy to violate a
law of the United States, and this only.

In the *first* count the alleged conspiracy was that
said Gandy and his co-defendant, McKinney, " did
unlawfully and fraudulently represent to one Israel R.
Cummings, that he, the said Pierce H. McKinney,
*alias* J. S. Allison, was a United States revenue offi-
cer for the district of Nebraska," etc., whereby they
were enabled to and did fraudulently extort from said
Cummings the sum of twenty-five dollars as a revenue
tax due from him as a retail dealer in spirituous, vi-
nous, and malt liquors, and the further sum of three
hundred and eighty dollars, in full satisfaction of an
alleged violation by said Cummings of said revenue
law in retailing such liquors, without having first
paid the special tax required by law.

The *second* count simply charges a conspiracy be-
tween the same parties to " personate the United States
marshal, and a United States revenue officer of the

district of Nebraska, intending unlawfully to extort and receive from the said Israel R. Cummings large sums of money;" that in pursuance of said conspiracy it is charged they did extort from said Cummings the sum of three hundred dollars.

In neither of these counts is it charged that Gandy "*falsely represented himself to be a revenue officer*," which would have been an indispensable averment in an indictment under section 5448. This section is in these words : " Every person who falsely represents himself to be a revenue officer, and in such assumed character demands and receives any money or other article of value from any person for any duty or tax due to the United States, or for any violation or pretended violation of any revenue law of the United States, shall be deemed guilty of a felony, and shall be fined five hundred dollars, and imprisoned not less than six months, and not more than two years."

That the judge of the court, in which the alleged conviction of Gandy took place, did not consider that either count of the indictment was based upon this section, is evident from the judgment which he rendered on the verdict of guilty on " both counts of the indictment " returned by the jury.

The judgment was that Gandy should " pay a fine of $1,000, and the costs of this prosecution, and that he be committed for the period of ninety days from and including the sixth day of May, 1872." This it will be seen conforms in no respect to the judgment required by section 5448, which is a fine of just five hundred dollars, neither more nor less, together with imprisonment for " not less than six months," but is entirely harmonious with section 5440, which is in these words, viz: " If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for

any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars, and not more than ten thousand dollars, and to imprisonment not more than two years."

That the prosecution and conviction of Gandy was under this section, and none other, is made very clear we think by a proper understanding of the indictment, and the penalty imposed upon him thereunder. It only remains, therefore, for us to consider what effect, if any, such conviction in 1872 had upon his qualification for the office in question at the time of his election in 1879. That such qualification depended upon his being entitled, at that election, to exercise the elective franchise, is conceded.

In the decision of this question it is unnecessary to determine the full extent to which disqualification to vote or hold office is carried by our laws, or whether a person who is in all other respects qualified to vote can be debarred of that right by reason of his having been convicted of a felony under the law of a sister state, or of a foreign country.

Howsoever that may be, it is clear that a person convicted of a *felony*, under a law of this state or of the United States, is not qualified to vote unless he be " restored to civil rights." This much is settled by the paramount law, the Constitution, sec. 2, Art. VIII. of which declares that " No person shall be qualified to vote who is *non compos mentis*, or who has been convicted of treason, or felony, under the law of this state or of the United States, unless restored to civil rights." And this provision was in force at the date of Gandy's election, and governed regardless of what the nominal legislation on the same subject may have been, inasmuch as it was entirely unaffected thereby.

But was Gandy convicted of a *felony?* His conviction, as we have seen, was for a conspiracy to commit an offense against the United States—nothing more. The law on this subject nowhere in terms declares this to be a felony, nor is there anything, either in the description of the offense or in the nature of the penalty to be inflicted on the offender, bringing it within that degree of criminality which, at common law, subjected the felon to the forfeiture of lands or goods, or both, and with us to an infamous punishment, viz.: death, or imprisonment in the penitentiary.

Had the conviction been under section 5448, as contended by counsel for the state, there could have been no question as to its felonious character, for it is there expressly declared that the offender against its provisions " shall be deemed guilty of a felony." No similar provision being found in section 5440, and there being nothing necessarily infamous in the punishment therein provided, we must hold that Gandy was not convicted of a felony, but of a misdemeanor merely, and was fully qualified to hold the office to which he was elected.

As bearing upon this question, our attention was directed to section 5441, of the Revised Statutes of the United States, which provides that " in every case where any person convicted of any offense against the United States is sentenced to imprisonment for a longer period than one year, the court by which the sentence is passed may order the same to be executed in any state jail or penitentiary within the district or state where such court is held, the use of which jail or penitentiary is allowed by the legislature of the state for that purpose."

It was urged with considerable earnestness by counsel for the state in argument, that inasmuch as the *maximum* imprisonment which might have been im-

posed upon Gandy in the discretion of the court, under section 5440, was two years, which imprisonment, if for more than one year, might possibly have been executed in a state penitentiary, as provided in section 5441 above quoted, his conviction, although the imprisonment adjudged was but ninety days, must be considered as for a felony, and treated accordingly.

This, we think, would be giving too much importance to mere possibilities, and cannot be indulged in, especially when it is sought thereby to deprive a person of civil rights, which, next to life and personal liberty, are the most sacred. Besides, if it were intended by section 5441 to enable the court, in affixing the punishment for a given offense, in its discretion to consider it either as a felony or as a mere misdemeanor, then we think the rule adopted by the supreme court of California in the case of *People v. Cornell*, 16 Cal., 187, should be applied, viz.: that the punishment actually inflicted must determine the grade of that offense. This rule certainly has the merit of being both just and humane.

A question is also presented upon the refusal of the court below to grant a supersedeas of its judgment of *ouster*, or stay of proceedings, until the case could be reviewed here. No statute has been referred to by counsel, nor do we know of one that entitles a party to such an order in this sort of proceeding, yet we doubt not that it is within the province of the trial court, in its discretion, to grant it; but its refusal to do so cannot be made a subject for review in this court. Such being our views, the judgment of the court below must be reversed, and the information dismissed at the costs of the relator.

JUDGMENT ACCORDINGLY.